PEOPLE v BOWLING

Docket No. 307658. Submitted February 13, 2013, at Detroit. Decided
     February 21, 2013, at 9:10 a.m. Leave to appeal denied, 494 Mich ___.
Terry N. Bowling pleaded *nolo contendere* in the Oakland Circuit
     Court, Michael D. Warren Jr., J., to charges of first-degree home
     invasion, resisting and obstructing a police officer, and the second-
     degree murder of a police officer. Defendant was sentenced, as a
     fourth-offense habitual offender, to concurrent sentences of 50 to
     100 years for the home invasion conviction, 3 to 15 years for the
     resisting and obstructing conviction, and 100 to 150 years for the
     second-degree murder conviction, and he was ordered to pay
     restitution. The Court of Appeals granted defendant's delayed
     application for leave to appeal that claimed that defendant's
     sentences constituted cruel or unusual punishment, his sentencing
     guidelines range was calculated incorrectly, and he was improperly
     ordered to pay restitution.

     The Court of Appeals *held*:

     1. Defendant's sentences for the convictions of first-degree
home invasion and second-degree murder were not excessive and
did not constitute cruel or unusual punishment. Defendant's
100-year minimum sentence for the second-degree murder convic-
tion was within the sentencing guidelines range of 365 to 1,200
months or life. A sentence within the guidelines range is presump-
tively proportionate, and a proportionate sentence is not cruel or
unusual. Defendant failed to present evidence to overcome the
presumptive proportionality of his sentence. Defendant failed to
demonstrate that his sentences are cruel or unusual in comparison
to the penalties imposed for other crimes in this state or for the
same crimes in other states.

     2. The trial court correctly scored 50 points under offense
variable 6, MCL 777.36(1)(a), the offender's intent to kill or
injure another individual, because the killing was committed in
the course of a second-degree home invasion, an enumerated
offense. In addition, the scoring of 50 points was appropriate
under offense variable 6 because the killing was the murder of
a peace officer.

     3. Even if the trial court erred by scoring 10 points under

offense variable 9, MCL 777.39, the number of victims, a 10 point reduction in the scoring would not alter defendant's sentencing guidelines range. Resentencing is not required when a scoring error does not alter the appropriate guidelines range.

4. The trial court, in determining the amount of restitution, was entitled to rely on the accuracy of the claimed amount that the incident cost the homeowner as stated in the presentence investigation report because defendant failed to make a proper objection or request an evidentiary hearing regarding the amount of the homeowner's costs. However, the trial court erred by 10 cents in its calculation and the matter was remanded for the correction of the amount of restitution from $5,890.33 to $5,890.23. Although it has no effect on the sentence imposed, the case was also remanded for the administrative task of correcting defendant's judgment of sentence to reflect a sentence of 3 to 15 years for the resisting and obstructing conviction instead of the 50 to 100 year sentence erroneously stated in the judgment of sentence.

Affirmed and remanded.

1. CONSTITUTIONAL LAW — CRUEL OR UNUSUAL PUNISHMENT.

The Court of Appeals, in determining whether punishment is cruel or unusual, considers the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state as well as the penalty imposed for the same crime in other states.

2. SENTENCES — CONSTITUTIONAL LAW — SENTENCING GUIDELINES — PROPORTION-ATE SENTENCES.

A sentence within the sentencing guidelines range is presumptively proportionate; a proportionate sentence is not cruel or unusual punishment; a defendant must present unusual circumstances that would render a presumptively proportionate sentence disproportionate in order to overcome the presumption.

3. CRIMINAL LAW — RESTITUTION — CRIME VICTIM'S RIGHTS ACT.

The Crime Victim's Rights Act mandates that a defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate; a trial court must order the defendant to pay restitution and the amount must fully compensate the defendant's victims (MCL 780.766[2]).

4. SENTENCES — PRESENTENCE INVESTIGATION REPORTS — PRESUMPTION OF
   ACCURACY.

   A sentencing court may treat the contents of a defendant's presentence investigation report as presumptively accurate and rely on the report unless the defendant effectively challenges an adverse factual allegation in the report.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Chief, Appeallate Division, and *Danielle Walton*, Assistant Prosecuting Attorney, for the people.

*Arthur H. Landau* for defendant.

Before: RIORDAN, P.J., and HOEKSTRA and O'CONNELL, JJ.

RIORDAN, P.J. We granted defendant's delayed application for leave to appeal his convictions of first-degree home invasion, MCL 750.110a(2), resisting and obstructing a police officer, MCL 750.81d(1), and the second-degree murder of Livonia Police Officer Larry Nehasil, MCL 750.317. These convictions were a result of defendant's plea of *nolo contendere* to each of the charges. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 50 to 100 years for the first-degree home invasion conviction, 3 to 15 years for the resisting and obstructing conviction,[1] and 100 to 150 years for the second-degree murder conviction. Defendant now argues that his sentences constitute cruel or unusual punishment, his sentencing guidelines range was calcu-

---

[1] The judgment of sentence erroneously states that defendant was sentenced to 50 to 100 years for the resisting and obstructing conviction. We will remand to the trial court for the administrative task of correcting defendant's judgment of sentence to reflect the sentence of 3 to 15 years for the resisting and obstructing conviction.

lated incorrectly, and he was improperly ordered to pay restitution. We affirm defendant's convictions and sentences but remand for the administrative task of correcting his judgment of sentence and the amount of restitution ordered.

## I. FACTUAL BACKGROUND

Livonia police officers received a tip that defendant, his wife, and his brother were involved in a series of unsolved home invasions. On January 17, 2011, after surveilling defendant's behavior for a time, police officers watched him and his brother drive to a house on Glenwood Drive in Walled Lake. Before they had arrived on Glenwood, defendant and his brother had agreed to a plan whereby they would enter the house and steal various items such as guns and cash, as had been their practice in their previous home invasions. After they reached the residence, defendant's brother stepped out of the car and approached the house. Defendant remained in the car and drove it a short distance away. Defendant then returned to the house with the car and parked. When entering the Glenwood house, defendant and his brother broke one window and damaged another; they also damaged a sliding door and a garage door. In addition, they damaged the wood floors and parts of the drywall during their time inside the house.

After finding a safe, defendant left the house and went to get the vehicle. He intended to move it closer to the house so that it would be easier for him and his brother to load the safe they planned to steal. The police officers watching the front of the Glenwood house saw defendant enter the vehicle and decided the time had come to apprehend him.

Officer Nehasil was positioned in the back of the Glenwood house so he could arrest anyone who ran out

from that direction. Police officers approached defendant's vehicle on the street in front of the house and he tried to drive it around them. While he was attempting to flee, the police used one of their own cars to hit defendant's vehicle and force it into a snowbank. In an apparent last-ditch effort to avoid arrest, defendant got out of the vehicle and ran. Despite repeated commands to stop, he continued to flee until the police physically stopped him.

While the police in the front of the Glenwood house were occupied with trying to arrest defendant, a series of rapid gunshots rang out. Officers ran to the back of the house where they discovered Officer Nehasil's body lying on the ground. Defendant's brother was lying on top of the police officer. Both men were dead. Two guns were found at the scene, one belonging to Officer Nehasil and the other belonging to the owner of the Glenwood house. Defendant claimed that he did not see his brother with a gun before or during the home invasion. However, defendant stated that he and his brother had committed numerous home invasions in the past and it had been their practice to steal guns during these excursions. Defendant said that after stealing the guns he and his brother would sometimes sell them to drug dealers.

In exchange for dismissing a charge of first-degree murder, defendant pleaded *nolo contendere* to charges of first-degree home invasion, resisting and obstructing, and second-degree murder. Defendant was sentenced to 50 to 100 years for the first-degree home invasion conviction, 3 to 15 years for the resisting and obstructing conviction, and 100 to 150 years for the second-degree murder conviction.[2] Defendant now appeals.

---

[2] The habitual offender statute allows a trial court to "impose a maximum sentence beyond the statutory maximum upon a determina-

## II. CRUEL OR UNUSUAL PUNISHMENT

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not advance a claim below that his sentences were unconstitutionally cruel or unusual, so this issue is unpreserved. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Our review is therefore limited to plain error affecting defendant's substantial rights. *Id.*

### B. ANALYSIS

Defendant first argues that his sentences for the convictions of first-degree home invasion and second-degree murder are excessive and constitute cruel or unusual punishment as prohibited by state and federal constitutions.[3] We disagree. The protection afforded by the Eighth Amendment is the protection from "inherently barbaric punishments under all circumstances." *Graham v Florida*, 560 US ___, ___; 130 S Ct 2011, 2021; 176 L Ed 2d 825, 835 (2010). As the United States Supreme Court has recognized, "the essential principle" at issue is that "the State must respect the human attributes even of those who have committed serious crimes." *Id.*, 560 US at ___; 130 S Ct at 2021; 176 L Ed 2d at 835. "In deciding if punishment is cruel

---

tion that the defendant 'has been convicted of any combination of 3 or more felonies or attempts to commit felonies . . . .' " *People v Drohan*, 475 Mich 140, 161 n 13; 715 NW2d 778 (2006), quoting MCL 769.12(1).

[3] Defendant correctly notes that "the Michigan provision prohibits 'cruel *or* unusual' punishments, while the Eighth Amendment bars only punishments that are both 'cruel *and* unusual[,]' " *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866 (1992). Defendant has failed to demonstrate error requiring reversal under either provision. See also *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) ("If a punishment 'passes muster under the state constitution, then it necessarily passes muster under the federal constitution.' ") (citation omitted).

or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011).

Defendant's 100-year minimum sentence for his second-degree murder conviction is within his sentencing guidelines range of 365 to 1,200 months or life. A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

Defendant contends that his sentences are cruel or unusual because of his age, 49 years old, which effectively means he will spend the remainder of his life in jail. Yet, defendant incorrectly assumes that he is entitled to parole. That assumption is not supported by Michigan law. See *People v Merriweather*, 447 Mich 799, 809; 527 NW2d 460 (1994) (concluding there was no legislative intent that all defendants must be eligible for parole); see also *People v Carp*, 298 Mich App 472, 533 n 185; 828 NW2d 685 (2012), quoting *Crump v Lafler*, 657 F3d 393, 404 (CA 6, 2011) ("There is no legitimate claim of entitlement to parole [in Michigan], and thus no liberty interest in parole.") (quotation marks and citation omitted).

Furthermore, defendant's age is insufficient to overcome the presumptive proportionality of his sentences, especially considering his lengthy criminal record and

the gravity of his offenses. At the plea hearing, the trial court noted that defendant was charged as a fourth-offense habitual offender and that the crimes subjected him to a potential life sentence. Defendant had seven prior felonies and nine prior misdemeanors, and during the week of his sentencing he pleaded guilty in another matter to charges of home invasion and receiving and concealing a stolen firearm.

Defendant's extensive criminal record establishes a pattern of violence and disregard for others. The evidence indicates that the instant crimes were part of a string of recent home invasions in which defendant, his wife, and his brother planned and participated. Defendant admitted that they were looking for money, jewelry, and guns and that in the recent home invasions he had taken two or three guns and sold them for drugs. While defendant claims that he had no knowledge that his brother had a gun in his possession during the home invasion in which Officer Nehasil was murdered, his admission that they were looking for guns to sell and the inherently dangerous nature of a home invasion belies his claimed naiveté that violence would likely occur.

Defendant also has failed to demonstrate that his sentences are cruel or unusual in comparison to the penalties imposed for other crimes in this state or for the same crimes in other states. *Brown*, 294 Mich App at 390. Defendant offers no argument or evidence that, in relation to other crimes and other states, his sentences were somehow abnormally harsh. As we have repeatedly stated, an appellant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject

his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (quotation marks and citation omitted).

Thus, in light of the egregious nature of his offenses and the comparable sentences imposed on others, defendant has failed to demonstrate that his sentences were cruel or unusual and that there was any error requiring reversal.

### III. SCORING OF SENTENCING GUIDELINES

#### A. STANDARD OF REVIEW

Defendant next claims that he is entitled to resentencing because the trial court incorrectly scored offense variables (OVs) 6, MCL 777.36, and 9, MCL 777.39.

"The proper interpretation and application of the legislative sentencing guidelines are questions of law, which this Court reviews de novo." *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). We also review for clear error the trial court's findings of fact at sentencing. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). We will affirm a minimum sentence that is within the guidelines sentence range unless the trial court erred in the scoring of the sentencing guidelines or relied on inaccurate information. MCL 769.34(10).

#### B. ANALYSIS

"A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *Osantowski*, 481 Mich at 111. "Scoring decisions for which there is any evidence in support will be upheld." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002) (quotation marks

and citation omitted). Further, the goal in construing a statute "is to ascertain and give effect to the intent of the Legislature." *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004).

In regard to OV 6, MCL 777.36 states, in relevant part:

> (1) Offense variable 6 is the offender's intent to kill or injure another individual. Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer ............................................. 50 points

Defendant argues that the trial court erred by scoring 50 points under OV 6 because he did not have the requisite intent to kill since he was merely an accomplice to his brother and his brother did the shooting. Contrary to defendant's assertion, his intent to kill and whether he pulled the trigger are irrelevant when a killing occurs under particular circumstances. According to the plain language of the statute, the scoring of 50 points is appropriate when the offender has the premeditated intent to kill *or* the killing was committed in the course of the commission of one of the enumerated offenses. MCL 777.36. Defendant pleaded *nolo*

*contendere* to the charge of first-degree home invasion, an enumerated offense. During the home invasion, Officer Nehasil was shot and killed. Thus, a score of 50 points was appropriate because a killing was committed in the course of an enumerated felony. Alternatively, the scoring of 50 points is appropriate when "the killing was the murder of a peace officer[.]" MCL 777.36(1)(a). Defendant pleaded *nolo contendere* to a charge of second-degree murder, and the record supports the court's conclusion that the murder occurred during the course of a home invasion and that the victim was a peace officer. Therefore, defendant's participation in the first-degree home invasion was sufficient to support a score of 50 points under the plain language of the statute.

Defendant also challenges the scoring of OV 9, MCL 777.39. OV 9 requires the scoring of 10 points where "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss[.]" MCL 777.39(1)(c). The sentencing court must "[c]ount each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a).[4] Defendant argues that the trial court erred by scoring 10 points for OV 9 because there was only one person placed in danger of physical injury or death, Police Officer Nehasil. However, defendant's brother fired multiple shots in a residential neighborhood. There also was at least one resident present in the area, who was referred to in the presentence report and who witnessed defendant's brother fleeing out of the back of the garage moments

---

[4] The Michigan Supreme Court has held that it is error to consider "the entire criminal transaction" when scoring OV 9. *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). Thus, it "must be scored giving consideration to the sentencing offense alone[.]" *Id.*

before the shooting. Furthermore, even if the trial court erred by scoring 10 points under OV 9, a 10-point reduction in the scoring would not alter defendant's sentencing guidelines range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Hence, defendant has failed to demonstrate that he is entitled to resentencing on the basis of errors in calculating OV 6 and OV 9.

### IV. RESTITUTION

#### A. PRESERVATION AND STANDARD OF REVIEW

Lastly, defendant contends that the trial court erred by ordering him to pay restitution in the amount of $5,890.33. Because defendant raised this issue for the first time on appeal, we review his claim for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

#### B. ANALYSIS

Section 16(2) of the Crime Victim's Rights Act, MCL 780.766(2), mandates that a defendant "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate." This is not discretionary, because a trial court "must order the defendant to pay restitution and the amount must fully compensate the defendant's victims." *People v Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2012). Also, at sentencing the trial court may treat the contents of the presentence investigation report as presumptively accurate. *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993). The trial court is entitled to rely on the report

unless the defendant effectively challenges an adverse factual allegation in the report. *Id.*

In the instant case, the presentence investigation report contained information regarding the costs of this incident to the homeowner. The homeowner indicated that he and his family received professional counseling after the home invasion, costing $880. He also requested $1,000 reimbursement for the insurance deductible he paid relating to the damage caused during the home invasion and $1,131.46 for carpet replacement, which his insurance did not cover. In addition, his insurance company incurred $2,878.77 in costs paid to the homeowner. Although there was ample opportunity, defendant never challenged these factual assertions in the report. Thus, the trial court was entitled to rely on the accuracy of the amounts provided in the presentence investigation report. While defendant now requests a remand for an evidentiary hearing, it was "incumbent on the defendant to make a proper objection and request an evidentiary hearing. Absent such objection, the court is not required to order, *sua sponte,* an evidentiary proceeding to determine the proper amount of restitution due." *People v Gahan,* 456 Mich 264, 276 n 17; 571 NW2d 503 (1997). Accordingly, we decline to remand this matter for such an evidentiary hearing. However, we note that the total restitution amount indicated in the presentence investigation report was $5,890.23, not the $5,890.33 ordered by the trial court. The trial court's calculation was inaccurate by 10 cents. This should be administratively corrected on remand.

V. CONCLUSION

Defendant has failed to demonstrate that his sentences constitute cruel or unusual punishment, that he

is entitled to resentencing on the basis of errors in calculating OV 6 and OV 9, and that the trial court erred by ordering him to pay restitution. We affirm defendant's convictions and sentences, although we remand for the administrative task of correcting the restitution amount of $5,890.33, by 10 cents to $5,890.23. Although it has no effect on the sentence imposed by the trial court, we also remand for the administrative task of correcting defendant's judgment of sentence to reflect the trial court's imposition of a sentence of 3 to 15 years for the resisting and obstructing conviction. We do not retain jurisdiction.

HOEKSTRA and O'CONNELL, JJ., concurred with RIORDAN, P.J.