*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MAURICE DONQUI THOMPSON-MOORE,

        Defendant-Appellant.

UNPUBLISHED
September 17, 2020

No. 348242
Wayne Circuit Court
LC No. 18-007825-01-FC

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his multiple convictions arising from the armed robbery of a store. Defendant argues that the evidence presented at trial was insufficient to prove his identity as one of the robbers. In addition, defendant challenges his within-the-guidelines sentences as unreasonable, as well as cruel and unusual. Because defendant's arguments lack merit, we affirm.

## I. BACKGROUND

At approximately 7:40 p.m. on September 10, 2018, two men robbed the Family Dollar on Schoolcraft Road in Detroit. Both robbers carried guns and wore masks covering their faces. The two men demanded that the cashier, Reyanna Locket, open the cash register for them. Locket told the men that she could not open the cash register and needed to get a manager to open it. The two men followed Locket into the back of the store to get the manager, Tracey Avery. The men pointed their guns at Avery and demanded that she open the cash register.

As Avery fumbled to open the cash register, the store's security guard, Marquise Harris, came out of the bathroom and began shooting at the two men. Harris shot and killed one of the robbers, who was later identified as defendant's brother, Kevin Thompson. In addition, Harris shot the second robber in the upper-right portion of his torso. Harris, Locket, Avery, and Adriel Willis, a customer who was at the Family Dollar during the robbery, all testified that they could not see the face of either robber because the men were wearing masks. Harris, however, attempted to identify defendant as the second robber by his eyebrows.

Pamela Moore, defendant's mother, testified that she spoke to defendant at 7:46 p.m. on the night of the robbery. Moore testified that they had a poor cell-phone connection, but defendant was crying, and he informed Moore that he was on Schoolcraft Road and had been shot. A few minutes later, Moore received a phone call from her fiancé, Johnny Byrd, who informed her that defendant was at her home, which was approximately five to seven minutes away from the Family Dollar, and that Byrd was going to take defendant to the hospital.

At approximately 8:30 p.m., defendant was dropped off at Beaumont Hospital in Taylor, where he was treated for a gunshot wound. Detroit Police Department Detective Shannon Wright testified that Beaumont Hospital was approximately a 20-minute drive from the Family Dollar. Defendant informed Taylor Police Department Officer Steven Kish that he was shot while walking to a gas station on Warren Avenue near Evergreen Road. Detective Wright testified, however, that no shootings were reported that evening, other than the one that occurred at the Family Dollar.

Stan Brue, a forensic analyst for the Detroit Police Department, testified that within 15 minutes of the robbery, two phone calls were placed from defendant's cell phone in the area of the Family Dollar. Furthermore, Detroit Police Sergeant Kevin White explained that defendant was a suspect in this armed robbery because two men were involved in the robbery, defendant's brother was shot and killed during the robbery, Harris shot both robbers, and defendant appeared at the hospital soon after the robbery with a gunshot wound.

After a trial, the jury convicted defendant of assault with the intent to commit murder (AWIM), MCL 750.83, three counts of armed robbery, MCL 750.529, carrying a dangerous weapon with unlawful intent, MCL 750.226, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to a term of 28 to 50 years in prison for the AWIM conviction, 28 to 50 years in prison for each armed-robbery conviction, one to five years in prison for the conviction of carrying a dangerous weapon with unlawful intent, one to five years in prison for the felon-in-possession conviction, and two years in prison for each felony-firearm conviction.

This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecutor presented insufficient evidence to support his convictions. Specifically, defendant asserts that the prosecutor failed to prove, beyond a reasonable doubt, that he was the second robber.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). We review the evidence in the light most favorable to the prosecutor to determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt. *Id*.

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The prosecutor therefore bears the burden to prove beyond a reasonable doubt that the defendant was the person who committed the alleged crime. Identity can be established through either direct testimony or inferences drawn from circumstantial evidence. *People v Bass*, 317 Mich App 241, 263-264; 893 NW2d 140 (2016). This Court "should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018) (cleaned up). This is because issues regarding the credibility of a witness are factual determinations for the jury to decide. *People v Hoang*, 328 Mich App 45, 68; 935 NW2d 396 (2019).

Defendant asserts that the prosecutor presented insufficient evidence to establish his identity as the second robber. As explained earlier, none of the eyewitnesses to the robbery were able to identify the robbers because they wore masks. Nonetheless, the prosecutor presented circumstantial evidence that tended to identify defendant as the second robber. Cell-phone records indicated that defendant placed two telephone calls from an area near the Family Dollar, close in time to the robbery. Defendant's mother admitted that he called her within minutes of the robbery, crying and stating that he was on Schoolcraft Road and had been shot. Defendant's brother was positively identified as the first robber. The store security guard shot the second robber, and defendant not only told his mother that he had been shot, but appeared at a hospital with a gunshot wound close in time to the robbery. Although defendant told police that he had been shot in a different location, a police witness testified that no shootings were reported that evening, other than the one that occurred at the Family Dollar. From these facts, we conclude that the prosecutor presented sufficient circumstantial evidence to convince the jury, beyond a reasonable doubt, that defendant was the second robber.

## B. SENTENCING

Defendant next argues that the trial court abused its discretion when it sentenced defendant to four concurrent terms of 28 to 50 years in prison for the AWIM conviction and three armed-robbery convictions. Defendant asserts that his minimum sentences of 28 years in prison are disproportionate, unreasonable, and a violation of the federal constitutional guarantee against cruel and unusual punishment, as well as the Michigan constitutional guarantee against cruel or unusual punishment. These arguments are without merit.

This Court reviews sentencing issues for an abuse of discretion by the trial court. *People v Sabin (On Second Remand)*, 242 Mich App 656, 660; 620 NW2d 19 (2000). "A trial court abuses its discretion when it imposes a sentence that is not proportional to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 661. "A sentence that falls within the appropriate sentencing guidelines range is presumptively proportionate." *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). Furthermore, under MCL 769.34(10), this Court must affirm a sentence within the recommended-minimum-sentencing range "unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).

The minimum-sentencing-guidelines range applicable to defendant was 171 to 356 months in prison. The trial court sentenced defendant to four concurrent terms of 28 to 50 years in prison for the AWIM conviction and each conviction of armed robbery. Thus, defendant's 28-year

minimum sentences (336 months) are within the guidelines range. Defendant does not assert that there was an error in scoring the guidelines or that the trial court relied on inaccurate information. Therefore, defendant's sentences are presumptively proportionate and must be affirmed.

Lastly, defendant argues that his sentences constitute a violation of the guarantee against "cruel and unusual punishment" provided by the United States Constitution and the guarantee against "cruel or unusual punishment" provided by the Michigan Constitution. US Const, Am VIII; Const 1963, art 1, § 16. Defendant's argument is without merit.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. US Const, Am VIII. Article 1, § 16, of the Michigan Constitution prohibits cruel or unusual punishment. This Court has previously stated that "a sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment" under the state Constitution. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (citations omitted). Moreover, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). To overcome the presumption of proportionality, "a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).

As previously noted, defendant's sentences are within the statutory guidelines range and are, therefore, presumptively proportionate. To overcome this presumption, defendant cites caselaw that overturned sentences of life without parole as cruel or unusual punishment. Defendant argues that concurrent sentences of 28 to 50 years of imprisonment are comparable to a sentence of life without parole because of his age. At the time this appeal was taken, defendant was 27 years old. Defendant will be 56 years old when his minimum sentences will be served. A defendant's age, alone, is insufficient to overcome the presumption that a sentence within the guidelines range is proportional. *Bowling*, 299 Mich App at 558. The trial court did not commit plain error because defendant's sentences do not constitute cruel or unusual punishment under the state Constitution, and therefore, do not violate the federal Constitution.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle