*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY HALL,

Defendant-Appellant.

UNPUBLISHED
September 17, 2020

No. 348799
Wayne Circuit Court
LC No. 18-007307-01-FC

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his multiple convictions arising from a shooting. Although the victim identified defendant as the shooter, he argues that the evidence presented at trial was insufficient to prove his identity. In addition, defendant challenges his departure sentence as unreasonable, as well as cruel or unusual. Because defendant's arguments lack merit, we affirm.

## I. BACKGROUND

This case arises out of the drive-by shooting of the victim, who told the 911 dispatcher and responding officers that she was shot by the driver of a black, two-door car with tinted windows. The victim was unable to describe the shooter or passenger of the suspect vehicle to the 911 dispatcher. It was not until police officers spoke to the victim at the hospital that she described the shooter as a "[b]lack guy, medium dark complexion, braids, younger twenties" and described the passenger as "[b]lack guy, light skinned." When the officers showed the victim a photographic array, she identified defendant as the shooter. At trial, she agreed that defendant was lighter skinned than herself. The jury also heard testimony that defendant did not have his hair in braids at the time of the shooting.

Police officers located a black 2005 Chevrolet Monte Carlo near the scene of the shooting. When officers discovered the vehicle, its engine was warm and its parking lights were still on. The car belonged to Julian Sullivan, who testified that defendant drove him to John Jenkins's house in the Monte Carlo. When Sullivan entered Jenkins's house, defendant remained in possession of Sullivan's car keys. Sullivan went to a back room of Jenkins's house to smoke crack cocaine, and upon exiting the room, discovered that both his Monte Carlo and defendant were gone. Later,

defendant returned to Jenkins's house in the Monte Carlo, and police arrived shortly thereafter. Sullivan consented to a search of the car. Police found defendant's cellphone in the center console, as well as a live round on the rear seat. The live round was the same brand and caliber as the shell casings that police found at the scene of the shooting.

After a trial, the jury convicted defendant of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed firearm (CCW), MCL 750.227, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to a term of 10 to 20 years in prison for the AWIGBH conviction, 6 to 10 years in prison for the felon-in-possession conviction, 6 to 10 years in prison for the CCW conviction, and two years in prison for each felony-firearm conviction.

This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecutor presented insufficient evidence to prove that he was the person who committed the shooting. This argument is without merit.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). We review the evidence in the light most favorable to the prosecutor to determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt. *Id*. Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime, and we must draw all reasonable inferences and make all credibility choices in support of the verdict. *Id*. at 613-614. "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (cleaned up).

Defendant argues that there was no reliable evidence to establish his identity as the person who committed the shooting. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). In challenging the evidence of his identity, defendant focuses on the victim's inconsistent statements regarding his appearance, as well as Sullivan's credibility.

The victim testified at trial that defendant was the person who shot her. She also picked defendant out of a photographic array shortly after the shooting occurred. Even though the description she gave before identifying defendant in the photographic array was not entirely

---

[1] The trial court granted a directed verdict on the charge of unlawfully driving away of an automobile, MCL 750.413. The jury convicted defendant of AWIGBH rather than the greater offense of assault with intent to murder, MCL 750.83.

consistent with defendant's appearance, this inconsistency went only to the weight of the evidence. "Any discrepancy between complainant's initial description and defendant's actual appearance is relevant to the weight of such evidence, not to its admissibility." *People v Davis* 241 Mich App 697, 705; 617 NW2d 381 (2000). It was for the jury to decide whether the victim's initial inability to describe defendant and subsequent description affected the credibility and weight of her identification of defendant at trial.

Sullivan testified at trial that defendant had possession of his car at the time of the shooting. Defendant argues that Sullivan's testimony was "hardly credible" because Sullivan admitted using drugs on the night in question. Despite the credibility issues surrounding Sullivan's testimony, the jury heard testimony about the drug use and, even given this, appears to have credited that testimony, and this Court must make credibility choices in support of the jury verdict. *Savage,* 327 Mich App at 613-614. The combined testimony of Sullivan and the victim provided sufficient evidence from which the jury could have found, beyond a reasonable doubt, that defendant committed the charged offenses.

## B. SENTENCING

Defendant also argues that his sentences were disproportionate and unreasonable, and constituted cruel or unusual punishment.

## 1. REASONABLENESS

This Court reviews whether a sentence is reasonable using the abuse of discretion standard of review. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A sentencing court abuses its discretion when it violates the principle of proportionality by imposing a sentence that is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474 (cleaned up). Additionally, even though the sentencing guidelines are advisory, " '[s]entencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review.' " *Id*. at 470, quoting *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

"[T]his Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). A sentence is reasonable under *Lockridge* if it adheres to the principle of proportionality set forth in *Milbourn*, which "requires the sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (cleaned up).

"An out-of-guidelines sentence may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Id*. (cleaned up). Factors a trial court may consider under the proportionality standard include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by
> the guidelines; and (3) factors not considered by the guidelines, such as the

relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. (cleaned up).]

"[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (cleaned up).

Here, the trial court sentenced defendant to a minimum of 120 months in prison for the AWIGBH conviction. The minimum-sentencing-guidelines range for this offense was 38 to 114 months in prison. Thus, defendant's sentence represented an upward departure of six months. Before sentencing defendant, the trial court stated:

I'm going to set forth some factors before I impose sentence in this matter, and those factors are that [defendant] first of all, was convicted back in approximately July of 2017 for Carrying a Concealed Weapon. He was on probation when he picked this matter up under a HYTA [Holmes Youthful Trainee Act] Program. Then while he was on probation he, also, picked up two additional counts of felony counts of [sic] and was convicted of two counts of Controlled Substance, Delivery and Manufacture Narcotic or Cocaine Under Fifty Grams. And, and then as he's waiting to be sentenced on those two felony convictions he pick [sic], this case happens. And I agree with the prosecutor, this was completely unprovoked. There was nothing that this victim did that should have resulted in [her] being shot. And the victim was in a wheelchair and the victim--

This [defendant] comes flying up in a car and opens up fire and shoots this victim in the thigh. And the jury has found him guilty of five counts, and I'm going to go through each one count, each count.

After sentencing defendant, the trial court noted, "And the [c]ourt understands that the guidelines are advisory now only pursuant to [*Lockridge*], and I believe that the sentence that I have set forth here is reasonable." It further noted, "And I believe that the sentence is reasonable, I believe that it has a deterrent affect [sic], that it protects society, that it properly disciplines the wrongdoer, that it is reformational and it is, also, proportional."

The trial court's rationale went to defendant's rehabilitative potential and the seriousness of these offenses. Defendant was on probation when he committed the charged offenses. Defendant was also awaiting sentencing for two felony-drug convictions at the time of the sentencing at issue here. This demonstrates defendant's lack of respect for the criminal justice system as well as his poor potential for rehabilitation. The victim in this case was also a vulnerable, wheelchair-bound individual, and defendant's actions toward her were completely unprovoked. The sentencing guidelines did not take into account either the victim's vulnerability or the unprovoked nature of the shooting. Overall, the trial court sufficiently explained its justification for imposing the departure sentence. Therefore, defendant's sentences were proportionate and reasonable.

## 2. CRUEL OR UNUSUAL PUNISHMENT

Lastly, defendant argues that his sentences were cruel or unusual and that he is entitled to resentencing. Defendant did not "advance a claim below that his sentences were unconstitutionally cruel or unusual, so this issue is unpreserved." *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). We review unpreserved constitutional issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment" and the Michigan Constitution prohibits "cruel or unusual punishment." "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (cleaned up). "[W]hether a penalty may be considered cruel or unusual is to be determined by a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Id*.

As discussed earlier, defendant's sentences are proportionate. "[A] sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Accordingly, defendant's sentences do not constitute cruel or unusual punishment. This is true even considering defendant's age at the time of sentencing because a defendant's age alone "is insufficient to overcome the presumptive proportionality of his sentences." *Bowling*, 299 Mich App at 558-559. Furthermore, defendant fails to compare the sentences imposed to penalties for other crimes under Michigan law, and fails to compare Michigan's penalty to penalties imposed for the same offenses in other states. Defendant has failed to establish that his sentences constitute cruel or unusual punishment.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle